UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BRAUN SHULAW,

      Plaintiff,                        CIVIL ACTION NO. 09-14194

     v.                               DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF              MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On October 24, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Supplemental Security Income benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 7, 12).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on December 8, 2006, alleging that he became unable to work on September 1, 2005 (Tr. 103-105). The claim was initially disapproved by the Commissioner on March 27, 2007 (Tr. 63-66). Plaintiff requested a hearing and, on March 30, 2009, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Peter C. Erickson, who considered the case *de novo*. In a decision dated May 15, 2009, the ALJ found that Plaintiff was not

disabled (Tr. 12-25). Plaintiff requested a review of this decision on May 26, 2009 (Tr. 8-11). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on August 28, 2009, denied Plaintiff's request for review (Tr. 1-3).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### *A. ALJ Findings*

Plaintiff was 48 years old on the date his application for benefits was filed (Tr. 24). Plaintiff has past relevant work as a janitor and apartment manager (Tr. 24). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 22, 2006, Plaintiff's application date (Tr. 17). At step two, the ALJ found that Plaintiff had the following "severe" impairments: congenital heart failure, status-post aortic valve replacement, heart valve infection, asthma, obesity, degenerative joint disease in the knees and ankles, bipolar disorder, and a history of substance abuse. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr.18). Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except occasional lifting of 20 pounds and frequent lifting of 10 pounds; sitting for 6 of 8 hours; standing or walking for 6 of 8 hours with only 30 minutes at a time; no work involving foot pedals for machine operation; only inside work; no work in environments with concentrations of smoke, dust or chemical fumes; and simple and unskilled for or simpler semi-skilled work with an SVP of 3-4" (Tr. 19). At step four, the ALJ found

that Plaintiff could not perform any of his past relevant work (Tr. 24). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as mail clerk (2,500 jobs in Michigan), cashier (6-7,000 jobs in Michigan) or assembly worker (7-8,000 jobs in Michigan) (Tr. 25).

### B. *Administrative Record*

#### 1. Medical Evidence

##### I) Cassandra J. Zak, N.P, a Nurse Practitioner

On August 5, 2008, Cassandra J. Zak, a Nurse Practitioner, completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" at the request of Plaintiff's attorney (Tr. 1326-1330). Nurse Practitioner Zak opined that Plaintiff could only sit for one hour a day and stand and walk for thirty minutes each during an eight hour day (Tr. 1327). Nurse Practitioner Zak indicated that Plaintiff would be able to perform combined sitting, standing, and walking for only one hour during an eight hour day if allowed to alternate activities (Tr. 1327). She opined that Plaintiff could occasionally lift and carry 20 pounds and 10 pounds frequently (Tr. 1328). Nurse Practitioner Zak also opined that Plaintiff could only perform frequent fine and gross manipulations with the right hand and could only perform repetitive movements with his right foot (Tr. 1328). She further opined that Plaintiff could never reach overhead, squat, kneel, climb ladders, crawl, or stoop (Tr. 1329). Additionally, Nurse Practitioner Zak opined that Plaintiff needed to avoid exposure to unprotected heights, moving machinery, temperature extremes, dust, chemicals, fumes, cold and wet weather, and humidity (Tr. 1329).

##### ii) Tama Abel, M.D., Consultative Examiner

Tama D. Abel, M.D., conducted a consultative neurologic and orthopedic examination on February 10, 2007, at the request of the State Agency (Tr. 1109-1117). Dr. Abel reported that

Plaintiff did not use an assistive device to ambulate and that Plaintiff stated he could sit for an unlimited time (Tr. 1114). He observed Plaintiff sitting comfortably in a chair and in no obvious distress (Tr. 1115). He noted that Plaintiff's gait was stable and within normal limits, he was able to tandem walk and walk on heels and toes, and did not require any ambulatory aid (Tr. 1113, 1116). Dr. Abel noted that Plaintiff reported trying to walk about four blocks two times a day, that he could lift about 20 pounds, and that he could stand about 20 minutes (Tr. 1117). Plaintiff's grip strength was 90 pounds on the right and left side (Tr. 1116). Range of motion of the joints was full; cranial nerves were intact; motor strength and tone were normal; reflexes were intact; and straight-leg-raise testing was negative for radicular symptoms bilaterally (Tr. 1116-1117).

Based on his examination, Dr. Abel opined that Plaintiff could sit, stand, bend, stoop, carry, push, pull, button clothes, tie shoes, and climb stairs (Tr. 1112; 1116). He observed that Plaintiff had no trouble doing things with his hands (Tr. 1115). Dr. Abel indicated that Plaintiff's mental status was normal (Tr. 1113, 1116). He opined that Plaintiff was "able to understand, carry out, and remember instructions, and respond appropriately to outside pressures" (Tr. 1117).

### iii) Carol L. Rice-Miner, M.S., PA-C, Physician Assistant

On March 30, 2007, Physician Assistant Rice-Miner evaluated Plaintiff at the VA Hospital in Ann Arbor for complaints of "bipolar disorder and depression" (Tr. 1342-49). She noted that Plaintiff was a high school graduate and not currently on any prescribed medications (Tr. 1343). Plaintiff admitted to a twenty year history of cocaine dependence and continual usage of marijuana (Tr. 1344). Plaintiff reported that he "feels his mania...during periods of cocaine use" (Tr. 1345). He denied any past suicide attempts (Tr. 1345). He also admitted to drinking alcohol and that he had two to three DUIs, with his license in suspension by the State of California (Tr. 1345). Plaintiff reported last using cocaine two years earlier and last using alcohol five years earlier (Tr. 1344-45).

Plaintiff also reported that he was dishonorably discharged from the Army due to drug use and disobeying orders (Tr. 1346). He further admitted to having been jailed over 50 times for narcotics, theft, and probation violations (Tr. 1346). On mental status examination, Physician Assistant Rice-Miner reported that Plaintiff was alert, had good eye contact, and was dressed and groomed fairly well (Tr. 1347). Plaintiff had normal rate and rhythm of speech; there were no alterations of thought processes observed; Plaintiff denied difficulty with focus or concentration; and he denied any delusions or hallucinations (Tr. 1347). Physician Assistant Rice-Miner opined that Plaintiff's insight was fair (Tr. 1347). She diagnosed Plaintiff with Conduct Disorder; Bipolar II; Cannabis Dependence; Cocaine Dependence in remission; and Alcohol Dependence in remission, and assigned him a Global Assessment of Functioning ("GAF") score[1] of 55; indicating only moderate symptoms (Tr. 1347-48).

On September 5, 2008, Physician Assistant Rice-Miner completed a form entitled "Mental Residual Functional Capacity Assessment" at the request of Plaintiff's attorney (Tr. 1338-41). She opined that Plaintiff was "markedly limited" in his ability to: remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; get along with

---

[1] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

coworkers or peers without distracting them or exhibiting behavioral extremes; and travel in unfamiliar places or use public transportation (Tr. 1139-40).

### iv) Carol Kauffman, M.D.

On September 5, 2008, Dr. Kauffman completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" at the request of Plaintiff's attorney (Tr. 1350-54). Dr. Kauffman opined that Plaintiff could only sit for two hours a day and stand and walk for thirty minutes each during an 8-hour day (Tr. 1351). She also indicated that Plaintiff would be able to perform combined sitting, standing, and walking for only one hour during an 8-hour day if allowed to alternate activities (Tr. 1351). She opined that Plaintiff could occasionally lift and carry 20 pounds and 10 pounds frequently (Tr. 1352). Dr. Kauffman also opined that Plaintiff did not have any limitation in his ability to perform fine and gross manipulations (Tr. 1352). She further opined that Plaintiff could not use his feet or legs for the repetitive movements such as the operation of foot controls (Tr. 1352). Dr. Kauffman indicated that Plaintiff could occasionally bend, twist, reach, kneel, and climb stairs, but never squat, climb ladders, crawl, or stoop (Tr. 1353). Additionally, she opined that Plaintiff needed to avoid exposure to unprotected heights, moving machinery, dust, chemicals, and fumes (Tr. 1353).

### v) Cara McDonagh, M.D.

On October 16, 2008, Dr. McDonagh completed a form entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" at the request of Plaintiff's attorney (Tr. 1362-65). Dr. McDonagh opined that Plaintiff could only sit for two hours a day and stand and walk for one hour each during an 8-hour day (Tr. 1362). She also indicated that Plaintiff would be able to perform combined sitting, standing, and walking for only one hour during an 8-hour day if allowed to alternate activities (Tr. 1362). She opined that Plaintiff could occasionally lift and carry 20 pounds and 10 pounds frequently (Tr. 1363). Dr. McDonagh also opined that Plaintiff did not have

any limitation in his ability to perform fine and gross manipulations (Tr. 1363). She further opined that Plaintiff could not use his feet or legs for the repetitive movements such as the operation of foot controls (Tr. 1363). Dr. McDonagh indicated that Plaintiff could occasionally bend, twist, reach, kneel, and climb stairs, crawl, and stoop, but never squat or climb ladders (Tr. 1364). Additionally, she opined that Plaintiff needed to avoid exposure to unprotected heights, moving machinery, dust, chemicals, and fumes (Tr. 1364).

### 3. Expert Testimony

Dr. Andrew Steiner testified at the hearing as a medical expert (ME) (Tr. 49-54). Dr. Steiner testified that he reviewed Plaintiff's medical records, and concluded that Plaintiff's treatment for his heart condition was "reasonably successful," that Plaintiff's asthma was "controlled" and that "arthritic findings are minimal" (Tr. 51). Dr. Steiner further testified that the following functional restrictions were appropriate for Plaintiff: "...[L]ight residual as far as lifting in (sic) time on feet. I think the asthma condition would preclude environments with high concentrations of air pollutants. Foot pedals I think would be limited to occasional." *Id.*

Robert Brezinski testified at the hearing as a vocational expert (VE) (Tr. 55-60). The ALJ posed the following hypothetical question to the VE: "[W]e've got a 50-year-old man, high school education. He has the impairments just recited by Dr. Steiner. I'm going to limit him to a modified light RFC, 20 pounds occasionally, 10 pounds more frequently. He can sit six of eight [hours]. He can stand or walk six of eight [hours], but I'm going to limit that to 30 minutes maximum at one time. And I'm just going to restrict him to inside work only so he doesn't have any light, sunlight exposure during the day. And no work in concentrations of dust, smoke, or chemical fumes. And I'm going to say a job which is simple and unskilled or simpler semi-skilled....Mr. Brezinski, with that RFC, could the claimant do any of [Plaintiff's] past relevant work?" (Tr. 56-57) The VE stated that such an individual could not do Plaintiff's prior work. *Id.*

The ALJ then asked the VE if there were any "light" jobs that would fit this hypothesized RFC; the VE responded that such a person could do retail sales type positions, but that Plaintiff did not have any transferable job skills to get such a job (Tr. 57). The ALJ then asked about light jobs that are "unskilled," and the VE testified that such a claimant could work as a mail clerk, cashier or an assembly-type job (Tr. 57-58). The VE further testified that a significant number of these jobs would allow for a sit/stand option, and that these jobs would not require foot pedal operation. *Id.*

The ALJ then asked the VE to next assume that "this individual suffers from some pain issues and with respect to that pain, this individual either would wake up in the morning and couldn't go to work one day per week or he would go to work and halfway through the day, he'd had it and would have to go home. Would that bring, would any of these jobs put up with that kind of accommodation?" (Tr. 59) The VE responded that such a limitation would preclude all competitive work. Finally, the ALJ asked the VE whether climbing "stairs only infrequently" would affect the jobs the VE previously suggested; the VE testified that such a restriction would not affect those jobs (Tr. 59).

### C. *Plaintiff's Claims of Error*

Plaintiff's challenge on appeal is that the ALJ did not properly weigh the opinions of his treating physicians. *See* Plaintiff's Brief (Pl.'s. Br.) at 7-10.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the

Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

## B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted earlier, Plaintiff's challenge on appeal is that the ALJ did not properly weigh the opinions of his treating physicians. *See* Plaintiff's Brief (Pl.'s. Br.) at 7-10. However, Plaintiff's brief does not make clear to which treating physicians he specifically is referring; instead, Plaintiff makes a vague reference to "all three treating physicians." *See* Pl.'s. Br. at 9. In any event, it appears that Plaintiff is referring to Drs. Kauffman and McDonagh and Physician Assistant Rice-Miner. Defendant responds that the ALJ's decision reveals that he properly weighed the medical source opinions of record in determining Plaintiff's RFC.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Cox v. Comm'r of Soc. Sec.*, 295 Fed.Appx. 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed.Appx. 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

1. **Physician Assistant Rice-Miner**

It must first be noted that – while Plaintiff refers to Physician Assistant Rice-Miner as "Dr. Rice-Miner" (Pl.'s. Br. at 9) – the record establishes that Ms. Rice-Miner is not a physician but, rather, a physician assistant (Tr. 1341, 1349). This distinction is significant, since nurse practitioners (such as Nurse Practitioner Zak) and physician assistants (such as Physician Assistant Rice-Miner) are not considered "acceptable medical sources" under the Commissioner's regulations. *See* SSR 06-03, 71 Fed.Reg. 45593, 45594 (August 9, 2006) ("Medical sources who are not 'acceptable

medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists...."). As this Ruling explains, "only acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to <u>controlling</u> weight. *See* 20 CFR §§ 404.1527(d) and 416.927(d). Thus, the opinions of Physician Assistant Rice-Miner and Nurse Practitioner Zak are not entitled to "controlling weight." *Id*. ("Making a distinction between 'acceptable medical sources' and medical sources who are not 'acceptable medical sources' facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source."); *see also Geiner v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[P]hysicians' assistants are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight.... Therefore, while the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician.")

While Physician Assistant Rice-Miner is not an "acceptable medical source" entitled to controlling weight under the regulations, the ALJ, nevertheless, considered her opinion but ultimately declined to accept it because the limitations contained therein were "unsupported by the record" (Tr. 23). Defendant persuasively points out that, although Physician Assistant Rice-Miner opined that Plaintiff was "markedly limited" in numerous functional areas, the clinical findings from her mental status evaluation of Plaintiff do not back up her very pessimistic opinion. *Compare* Tr. 1339-40 with Tr. 1347-48. Indeed, on mental status examination, Physician Assistant Rice-Miner reported that Plaintiff was alert, had good eye contact, was dressed and groomed fairly well (Tr. 1347). She reported that Plaintiff had normal rate and rhythm of speech; there were no alterations of thought processes observed, and denied any delusions or hallucinations (Tr. 1347). The ALJ

pointed out that Plaintiff denied any difficulty with focus or concentration (Tr. 19 citing Tr. 1347). Further, the ALJ noted that Physician Assistant Rice-Miner assigned Plaintiff a GAF score of 55, indicating only moderate symptoms (Tr. 22 citing Tr. 1348), which was consistent with other GAF scores in the record. *See* Tr. 22 citing Tr. 1388 (GAF of 55), 1401 (GAF of 55), 1438 (GAF of 60), 1453 (GAF of 60), 1493 (GAF of 55), 1502 (GAF of 55). Consequently, the ALJ was not persuaded that the "moderate" clinical findings identified by Physician Assistant Rice-Miner supported her very pessimistic opinion of "marked" limitations. *Compare* Tr. 1339-40 with Tr. 1347-48. *See* 20 C.F.R. § 416.927(c)(2) (Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence). As such, the ALJ's rejection of Physician Assistant Rice-Minter's opinion was based upon substantial evidence, and the undersigned sees no reason to disturb the ALJ's findings on appeal.

### 2. Drs. Kauffman and McDonagh and Nurse Practitioner Zak

The ALJ also considered the opinion of Drs. Kauffman and McDonagh that Plaintiff could only sit for 2 hours a day (Tr. 1351, 1362), as well as that of Nurse Practitioner Zak that Plaintiff could only sit for 1 hour a day (Tr. 1327). The ALJ observed that these opinions regarding Plaintiff's ability to sit were not consistent with other evidence in the record. *See* 20 C.F.R. § 416.927(d)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Notably, the ALJ pointed out that Dr. Abel noted that Plaintiff reported that he could sit for an unlimited time (Tr. 21 citing Tr. 1114). In fact, Dr. Abel observed Plaintiff sitting comfortably in a chair and in no obvious distress (Tr. 1115). Morever, the ALJ noted that Plaintiff testified that he could sit for short periods of time (Tr. 20), but Plaintiff's testimony reflects that the length of time he was able to sit was not determined by his pain tolerance but limited because he would "get antsy" (Tr. 41).

Additionally, the ALJ explained that he gave "significant weight" to the opinion of ME Steiner, who testified that Plaintiff remained capable of performing light exertional work (Tr. 23 referring to Tr. 51-52). Notably, Dr. Steiner did not identify any limitations on Plaintiff's ability to sit (Tr. 51-52). Thus, while the ALJ gave "some weight to these medical assessments," he declined to adopt the limitations on sitting offered by Drs. McDonagh and Kauffman and Nurse Practitioner Zak, because they were not consistent with the other evidence in the record. This conclusion was based on substantial evidence.

The ALJ also noted that Drs. Kauffman and McDonagh opined that Plaintiff would be able to perform combined sitting, standing, and walking for only one hour during an 8-hour day (Tr. 1351, 1362). Also, Nurse Practitioner Zak indicated that Plaintiff would be able to perform combined sitting, standing, and walking for only one hour during an eight hour day (Tr. 1327). Considering the proffered limitations on standing and walking, the ALJ explained, "the undersigned finds that these exertional limitations are unsupported by the medical evidence" (Tr. 23). Notably, the ALJ pointed out that Dr. Abel reported that Plaintiff did not use an assistive device to ambulate (Tr. 21 citing Tr. 1114), and Dr. Abel observed that Plaintiff's gait was stable and within normal limits, he was able to tandem walk and walk on heels and toes, and did not require any ambulatory aid (Tr. 1113, 1116). Additionally, the ALJ explained that he gave "significant weight" to the opinion of ME Steiner who testified that Plaintiff remained capable of performing light exertional work, "as far as lifting [and] time on feet" (Tr. 23 referring to Tr. 51-52). Moreover, Plaintiff testified that he takes his mothers's dog on walks each day (Tr. 36). Thus, while the ALJ gave "some weight to these medical assessments," he declined to adopt the limitations on standing/walking because they were not consistent with the other evidence of record.

Finally, the ALJ also found that Plaintiff's daily level of activity was not consistent with the exertional limitations set forth by Drs. Kauffman and McDonagh and Physician Assistant Rice-

-16-

Miner (Tr. 23). *See* 20 C.F.R. § 416.927(c)(2) (Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence). In particular, the ALJ noted that "[o]n April 16, 2007 and November 5, 2008, [Plaintiff] reported that he was working with his stepbrother on construction related work" (Tr. 23 citing Tr. 1385, 1454). The ALJ also noted that Plaintiff "reported that he was able to walk 1/4 of a mile and could climb 2 flights of stairs before becoming short of breath" (Tr. 23 citing Tr. 1395; see also Tr. 35-36). Further, the ALJ observed that Plaintiff "indicated that he enjoys engaging in outdoor activities during the summer months such as camping" (Tr. 23 citing Tr. 1398). The ALJ also noted that Plaintiff "wrote that he walks his mother's dog" (Tr. 23 citing Tr. 150; see also Tr. 36-37). Additionally, the ALJ noted that Plaintiff "testified that he handled his mother's finances, does housework, and cooks. He further stated that he uses the computer to post ads for his brother's construction business. He helps oversee his mother's rental properties going by the properties and calling in people to take care of any problems" (Tr. 23 citing Tr. 35-36, 39). Consequently, the ALJ determined that Plaintiff's level of activity was consistent with the range of work set forth in his RFC finding.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, *supra*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28

U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: October 18, 2010

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 18, 2010, by electronic and/or ordinary mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*
